This is an appeal from a summary judgment granted in favor of defendant T.G. Shurett in an action filed by M.J. Perlman and Ben N. Perlman (hereinafter referred to together as "Perlman") against Warrior-Hinckle, Inc., for damages based on an alleged breach of a lease agreement and against Shurett for damages based on an alleged tortious interference with the lease contract. The judge entered a summary judgment for Shurett and made that judgment final pursuant to Rule 54(b), A.R.Civ.P. Perlman appeals. We affirm.
In 1984, Warrior-Hinckle entered into an agreement with Perlman to lease a building from him for a period of three years at a monthly rental payment of $3,675. Pursuant to the lease, Perlman was given a lien on all goods located on the premises. In 1985, Warrior-Hinckle defaulted on the lease and vacated the lease premises. Shurett, who was then the president of Warrior-Hinckle, ordered the removal of the inventory from the building and, once removed, the inventory was placed in storage at L S Roofing Supply Company. Perlman sued Warrior-Hinckle for breach of the lease agreement and sued Shurett for tortious interference with business or contractual relations.
We have held:
 "[C]orporate officers or employees may individually commit the tort of intentional interference with business or contractual relations to which their corporation or employer is a party. See Nottingham v. Wrigley, 221 Ga. 386, 144 S.E.2d 749 (1965) (corporate officers in their personal capacities held liable for procuring the termination of plaintiff's employment with their corporation). However, courts have held that this tort cannot be maintained against officers or employees of a corporation unless those persons were acting outside their scope of employment and were acting with actual malice. Swager v. Couri, 77 Ill.2d 173, 32 Ill.Dec. 540, 395 N.E.2d 921 (1979); Martin v. Platt, [179 Ind. App. 688, 386 N.E.2d 1026 (1979)]; Gram v. Liberty Mut. Ins. Co., [384 Mass. 659, 429 N.E.2d 21 (1981)]; Nola v. Marollis Chevrolet Kansas City, Inc., 537 S.W.2d 627
(Mo.Ct.App. 1976). As the Supreme Court of Illinois put it, '[T]o be tortious, a corporate officer's inducement of his corporation's breach of contract must be done "without justification or maliciously." ' Swager, 77 Ill.2d at 190, 32 Ill.Dec. at 546, 395 N.E.2d at 927.
 "The Supreme Judicial Court of Massachusetts has explained 'malice' in the context of this tort:
 " 'Because Gosselin and Fisher were acting within the scope of their employment responsibilities, Gram acknowledges that each was privileged to act as he did unless he acted out of malevolence, that is, with "actual" malice. . . . The rule assigning liability to corporate officials only when their actions are motivated by actual, and not merely implied, malice has particular force because "their freedom of action directed toward corporate purposes *Page 1298 
should not be curtailed by fear of personal liability."
" '. . . .
 " 'Malice may be shown by the proof of facts from which a reasonable inference of malice may be drawn. The line between a proper inference and unwarranted conjecture is not easily drawn. The answer depends on the evidence in each case and on what the trier of fact may reasonably infer from that evidence.'
"Gram, 384 Mass. at 663-64, 429 N.E.2d at 24.
 "The Supreme Court of Oregon in Wampler v. Palmerton, 250 Or. 65, 7677, 439 P.2d 601 (1968), stated:
 " 'So long as the officer or employe acts within the general range of his authority intending to benefit the corporation, the law identifies his actions with the corporation. In such a situation the officer is not liable for interfering with a contract of the corporation any more than the corporation could be liable in tort for interfering with it.'
 "Therefore, the trial court was correct when it held that defendants . . ., were not liable as agents of the Hospital Board.
 "Defendants Reed and Jack could still be held individually liable for intentional interference with Hickman's business or contractual relations with the hospital if Hickman proved a prima facie
case. There still remains the question of whether the burden is on the plaintiff in order to make out a prima facie case to show that the employee defendants were not operating within the scope of their authority or whether the defendants must assert as a defense that they were acting within the scope of their authority. The Supreme Court of Oregon has stated:
 " 'The interest protected by the interference with contract action is the interest of the plaintiff in not having his contract rights interfered with by intermeddling strangers. However, so long as the person inducing the breach of a corporate contract is an officer or employe acting for the benefit of the corporation and within the scope of his authority, the plaintiff cannot show that this interest was invaded and therefore cannot maintain an interference with contract action.'
 "Wampler, 250 Or. at 77, 439 P.2d at 607. Although the Supreme Court of Oregon has never explicitly addressed the question of where this burden should lie, the above quotation indicates that the plaintiff's tort action depends upon a showing by the plaintiff that the defendant officer or employee was acting outside the scope of his authority.
 "Other courts have placed the burden upon the plaintiff to show that the defendant was acting outside the scope of his authority.
 " 'In light of these policies, Illinois law requires — to state a cause of action against corporate officers for interfering with their corporate principal's contract — the allegation of facts which, if true, establish that the officers induced the breach to further their personal goals or to injure the other party to the contract, and acted contrary to the best interest of the corporation.'
 George A. Fuller Co. v. Chicago Col. of Ost. Med., 719 F.2d 1326, 1333 (7th Cir. 1983) (Emphasis in original).
 "In Worrick v. Flora, 133 Ill. App.2d 755, 272 N.E.2d 708 (1971), the Appellate Court of Illinois, Third District, put the burden on the plaintiff to show that the defendant officer was 'acting other than in accord with his usual and customary duties in behalf of the corporation.' 133 Ill. App.2d at 758, 272 N.E.2d at 711. 'It is our conclusion that so long as a fellow employee is acting in accord with the interest of the employer no personal liability can devolve upon him.' 133 Ill. App.2d at 759, 272 N.E.2d at 711."
Hickman v. Winston County Hospital Board, 508 So.2d 237, 239-40
(Ala. 1987). It was noted in a special concurrence in that case:
 "[T]his opinion should not be interpreted as expanding or limiting our previous *Page 1299 
decisions in Gross v. Lowder Realty Better Homes Gardens, 494 So.2d 590 (Ala. 1986), and Lowder Realty, Inc. v. Odom, 495 So.2d 23 (Ala. 1986), which enumerated the elements required to establish a prima facie case of interference with contractual or business relations. In interpreting the impact of the newly defined tort in the employee-employer context, we do require that the plaintiff show malice, whereas in the ordinary case only intentional conduct is required. Furthermore, in order to show malice the plaintiff must make a strong showing of a pattern of interference. This is more than an isolated incident of the officer or employee's acting outside his scope of employment. To establish a prima facie case of this kind, the plaintiff must meet the four requirements enumerated in the Lowder Realty, cases, supra, and must show that the defendants acted outside their scope of employment and did so maliciously."
Hickman, supra, at 241 (Adams, J., concurring specially). In the case at bar, Perlman has failed to offer any evidence whatsoever that Shurett's order to remove the inventory from the building was done maliciously. In an attempt to show malice, Perlman states in his brief:
 "The record, however, contains evidence that Shurett was acting outside of his authority in ordering the removal of the secured goods from the leased premises. Shurett testified that he personally directed the removal of the goods and inventory on which Perlman had a lien. At Shurett's instruction, these goods were transferred to L S Roofing, a business completely unrelated to Warrior-Hinckle and, in fact, owned by Shurett's son-in-law."
In and of itself, this statement does not show that Shurett was acting outside the scope of his employment and with malice. The fact that L S Roofing was owned by Shurett's son-in-law is not an indication that the move was made for personal gain. In fact, so far as the record indicates, the goods are still stored at L S Roofing and have not been sold for the benefit of anyone. One incident is not sufficient to "make a strong showing of a pattern of interference." Hickman, supra, at 241 (Adams, J., concurring specially). Perlman has failed to make a prima facie case of tortious interference with contractual relations. Therefore, the judgment is hereby affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.