**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

_**DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.**_

**June 23, 2020**

# In the Court of Appeals of Georgia

A20A0251. AMERICAN CIVIL LIBERTIES UNION, LLC v. ZEH.

REESE, Presiding Judge.

After B. Reid Zeh sued American Civil Liberties Union, Inc., (the "ACLU") for defamation, the ACLU filed a motion to dismiss the complaint under Georgia's anti-Strategic Lawsuits Against Public Participation ("Anti-SLAPP") Statute.[1] The Superior Court of Glynn County denied the motion, and the ACLU appealed. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to Zeh,[2] Zeh's complaint alleged the following facts. In 2015, Zeh was the part-time misdemeanor public defender in state

---

[1] OCGA § 9-11-11.1.

[2] See _RCO Legal, P. S. v. Johnson_, 347 Ga. App. 661, 661-662 (820 SE2d 491) (2018).

court in Glynn County, but he also had a private practice where he represented clients in a variety of matters including felony cases in superior court. On the morning of April 1, 2015, Robert Cox was arraigned in state court for misdemeanor shoplifting. Cox attempted to plead guilty to the misdemeanor, but the prosecutor announced his intention to transfer the case to superior court and charge Cox with a felony pursuant to OCGA § 16-8-14 (c). The judge advised Cox to consult with an attorney.

Later that day, Cox went to Zeh's private practice office, seeking representation on the felony charge. Zeh's secretary contacted the office of the solicitor, who confirmed that Cox's charge would be increased to a felony and transferred to superior court. Cox agreed to compensate Zeh $2,500 for his professional services regarding the felony charge, and Cox's mother, Barbara Hamilton, mailed a check to Zeh that day. The case was transferred to superior court five days later, and Zeh ultimately secured a dismissal of the felony charge against Cox.

Three years later, the ACLU published a blog post titled, "Glynn County, Georgia's Crooked Public Defender[.]" The blog post began:

> As the public defender for Glynn County, Georgia, Reid Zeh is entrusted with advocating for the most vulnerable members of his community when they come up against the criminal justice system. Rather than do his job, however, Zeh routinely ignores his clients or worse — extorts

2

them to enrich himself. That's what happened when Robert Cox and his 75-year-old mother, Barbara Hamilton, came to Zeh for legal assistance after Cox was charged with a misdemeanor. Instead of looking out for his client's interests, Zeh took advantage of the family by charging them $2,500 for services that should have been free-of-charge.

The blog post went on to state that Zeh's behavior, which included ignoring Cox over the next two years, was consistent with the experiences of the ACLU's original two clients in the ACLU's pending lawsuit against Zeh and others. The ACLU continued: "That's why this week we're seeking permission from the [federal district] court to add Cox and Hamilton to our lawsuit against Zeh for his role in perpetuating Glynn County's wealth-based incarceration system and for failing to provide legal assistance to his clients who cannot afford a private attorney."[3]

The ACLU also linked to the article in a paid advertisement on Facebook, which included a picture of Zeh with the headline: "Rather than trying to get his clients out of jail, this public defender extorts money from them."

In August 2018, Zeh sued both the ACLU and Brunswick News Publishing Co. ("Newspaper"), which had run a news article with the headline, "ACLU alleges

---

[3] According to the ACLU, the blog post included a hyperlink, connected to the phrase "seeking permission" in the summary paragraph, to the relevant case filings.

lawyer 'extorted' arrestee's mother for son's defense[.]" After hearing oral argument, the trial court granted Newspaper's motion to dismiss and denied the ACLU's motion. The ACLU filed this appeal.

"We review de novo the trial court's denial of [a defendant's] motion to dismiss. In reviewing the trial court's order, we construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor."[4] With these guiding principles in mind, we turn now to the ACLU's claim of error.

The ACLU argues that the trial court erred in denying its motion to dismiss because its statements were protected under the anti-SLAPP statute and Zeh was not likely to succeed on his defamation claim.

The stated purpose of Georgia's anti-SLAPP statute is "to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech."[5] The General Assembly found and declared further that "the valid exercise of the constitutional rights of petition and freedom of speech should not be chilled

---

[4] *RCO Legal, P. S.*, 347 Ga. App. at 661-662 (citation and punctuation omitted).

[5] OCGA § 9-11-11.1 (a).

through abuse of the judicial process. To accomplish the declarations provided for under this subsection, this Code section shall be construed broadly."[6]

Twenty years after enacting Georgia's anti-SLAPP statute, the General Assembly substantially changed it in 2016, "fundamentally alter[ing] the mechanics of the anti-SLAPP procedure."[7] Under the new procedure,

> the analysis of an anti-SLAPP motion involves two steps. First, the court must decide whether the party filing the anti-SLAPP motion (usually, the defendant) has made a threshold showing that the challenged claim is one "arising from" protected activity. It is not enough to show that the claim was filed after protected activity took place or arguably may have been "triggered" by protected activity. The critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity. A defendant meets its burden by demonstrating that the act underlying the challenged claim could reasonably be construed as fitting within one of the categories spelled out in OCGA § 9-11-11.1 (c). If a court concludes that this threshold showing has been made, it must proceed to the second step of the analysis and decide whether the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. To meet this burden, the plaintiff must demonstrate that the complaint is both legally

---

[6] Id.

[7] *Wilkes & McHugh, P. A. v. LTC Consulting, L. P.*, 306 Ga. 252, 257-258 (2) (830 SE2d 119) (2019).

5

sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.[8]

Although Zeh argues that he was not a public official, he does not appear to dispute that the ACLU met its threshold showing that the claim was one "arising from" protected activity.[9] Thus, we turn to the second question: whether Zeh has established that there is a probability that he will prevail on his claim.

"A defamation claim requires proof of four elements:(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm."[10]

---

[8] Id. at 261-262 (2) (b) (citations and punctuation omitted).

[9] See OCGA § 9-11-11.1 (c) (3-4) ("As used in this Code section, the term 'act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern' shall include: [a]ny written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern; or [a]ny other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern."); see generally OCGA § 17-12-1 et seq. (the Georgia Indigent Defense Act of 2003).

[10] *Neff v. McGee*, 346 Ga. App. 522, 525 (1), n. 3 (816 SE2d 486) (2018) (citation and punctuation omitted).

*I. A False and Defamatory Statement Concerning Zeh*

According to the complaint, the ACLU falsely stated that, in his role as a public defender, Zeh "extorted" his clients by "charging them $2,500 for services that should have been free-of-charge." Although the ACLU argues that it was merely stating an opinion, its expression implies an assertion of objective fact.[11] As noted above, Zeh alleged that he maintained a private practice in order to handle felonies. Accepting Zeh's evidence as true, he has made a sufficient prima facie showing to establish that the objective facts were false and defamatory.[12]

*II. An Unprivileged Communication to a Third Party*

Although "charges, allegations, and averments contained in [court] pleadings" generally enjoy an absolute privilege, the communications at issue here are those that appeared in the ACLU's blog post and Facebook advertisement and are thus not absolutely privileged under OCGA § 51-5-8.[13] Certain other communications are

---

[11] See *Eidson v. Berry*, 202 Ga. App. 587 (415 SE2d 16) (1992).

[12] See *Wilkes & McHugh*, 306 Ga. at 264 (4).

[13] OCGA § 51-5-8 provides:

All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or

7

conditionally privileged where they are made in good faith.[14] However, Zeh has

established a prima facie case that the ACLU did not make its statements in good

faith, and that the statements are thus not privileged under OCGA § 51-5-7.[15]

"Statements are deemed to have not been made in good faith, but rather with

malice, if the evidence shows in a clear and convincing manner that a defendant in

not, are privileged. However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous.

[14] OCGA § 51-5-7 provides:

The following communications are deemed privileged: (1) Statements made in good faith in the performance of a public duty; (2) Statements made in good faith in the performance of a legal or moral private duty; (3) Statements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned; (4) Statements made in good faith as part of an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, as defined in subsection (c) of Code Section 9-11-11.1; (5) Fair and honest reports of the proceedings of legislative or judicial bodies; (6) Fair and honest reports of court proceedings; (7) Comments of counsel, fairly made, on the circumstances of a case in which he or she is involved and on the conduct of the parties in connection therewith; (8) Truthful reports of information received from any arresting officer or police authorities; and (9) Comments upon the acts of public men or public women in their public capacity and with reference thereto.

[15] See *Smith v. DiFrancesco*, 341 Ga. App. 786, 790-791 (2) (802 SE2d 69) (2017) (reversing summary judgment).

8

fact entertained serious doubts as to the truth of his statements."[16] Construed in the light most favorable to Zeh, Zeh did not represent Cox until after the prosecutor had expressed his intent in open court to transfer the shoplifting charge to superior court and charge Cox with a felony. Such transfer happened a few days later, more than three years before the ACLU made the statements at issue.

### III. Fault by ACLU Amounting at Least to Negligence

Zeh has made a prima facie showing that, as a part-time misdemeanor public defender, he is not a public official[17] under the standard of *New York Times Co. v. Sullivan*.[18] He has also made a prima facie showing that the ACLU should have determined from public court records whether there was any truth to Cox's contentions.[19]

---

[16] *Neff*, 346 Ga. App. at 527 (1) (a) (citation and punctuation omitted).

[17] See *Ellerbee v. Mills*, 262 Ga. 516, 516-517 (1) (422 SE2d 539) (1992).

[18] 376 U. S. 254, 279-280 (II) (84 SCt 710, 11 LE2d 686) (1964) (requiring a public official to show actual malice in an action against critics of his official conduct); see also id. at 283 (III), n. 23 (declining "to determine how far down into the lower ranks of government employees the 'public official' designation would extend for purposes of this rule[ ]").

[19] In Cox's June 15, 2018 declaration, attached to the motion for leave to file an amended complaint in the federal action, Cox stated that he struggled with an alcohol abuse disorder and that he had been charged with misdemeanors in Glynn

*IV. Special Harm or Actionability Irrespective of Special Harm*

Zeh alleged special damages by averring, inter alia, that his firm's monthly income dropped significantly as a result of the ACLU's statements and the resulting damage to Zeh's reputation. Further, damage is inferred because Zeh established a prima case that the statements constituted defamation per se.[20]

Accordingly, we conclude that the trial court did not err in denying the ACLU's motion to dismiss because Zeh established that there was a probability that he will prevail on his defamation claim.

*Judgment affirmed. Markle and Colvin, JJ., concur.*

---

County more times than he could remember. According to Cox, his attorneys had "refreshed [his] memory by sharing a handful of [his] court records." Cox stated: "Based on reviewing those records, I can describe a few of my cases over the last several months." "In one case after approximately seven arrests," Cox went to his court date, where the judge "directed [him] to see the public defender, Mr. Zeh. [Cox] went to Mr. Zeh's office right after court. Mr. Zeh indicated that he would charge [Cox] an additional $2,500 to represent me as my public defender."

[20] See *Cottrell v. Smith*, 299 Ga. 517, 524-525 (II) (788 SE2d 772) (2016).

10